DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} On January 27, 2008, Hoder was arrested for operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a).[1] On the night of his arrest, he submitted to a urine test. Hoder entered a plea of not guilty and filed a motion to suppress the results of the urine test, arguing that the state failed to show substantial compliance with the Ohio Revised Code and the Ohio Administrative Code. Hoder specifically objects to the handling of the sample until the time it was placed in transit. After a hearing, the Wayne County Municipal Court denied Hoder's motion to suppress. Subsequently, he withdrew his not guilty plea and entered a plea of no contest. The trial court found him guilty of operating a vehicle *Page 2 
while under the influence, second offense, and sentenced him accordingly. Hoder now appeals the denial of his motion to suppress. This Court reverses because we conclude that the state did not fulfill its burden to demonstrate substantial compliance with applicable state regulations with respect to proper refrigeration of the urine specimen.
 FACTS {¶ 2} On January 27, 2008 at approximately 2:20 a.m., Officer Gilkison of the Wooster Police was patrolling near the intersection of Bever and Liberty Streets. Officer Gilkison noticed Hoder driving towards him without his headlights illuminated. When Officer Gilkison was unable to make contact with Hoder as he passed in traffic to tell him his headlights were not on, Officer Gilkison initiated a traffic stop of Hoder's automobile.
 {¶ 3} Upon speaking with Hoder, Officer Gilkison noticed the odor of alcohol. He also noticed that Hoder's eyes were red and glassy. Officer Gilkison asked Hoder to step out of the vehicle.
 {¶ 4} At some point, Hoder consented to a urine screen and submitted a sample. Officer Gilkison observed Hoder as he provided the sample in the cup from Officer Gilkison's toxicology kit. Officer Gilkison then sealed the sample with the materials provided, completed the included chain of custody form, sealed the sample and the form in the box provided, and placed the box in the locked evidence refrigerator in the police station's property room.
 {¶ 5} Hoder's sample remained in the locked evidence refrigerator until it was removed on the morning of January 29, 2008, by the assistant property clerk for the Wooster Police. She set it out to be taken to City Hall where the mail carrier would pick it up. *Page 3 
 STANDARD OF REVIEW {¶ 6} An appeal from a ruling on a motion to suppress presents a mixed question of law and fact. State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. This Court must defer to the trial court's findings of fact as the trial court is in the best position to evaluate the evidence and determine the credibility of the witnesses. State v.Kurjian, 9th Dist. No. 06CA0010-M, 2006-Ohio-6669, at ¶ 10. A reviewing court accepts the trial court's findings of fact if they are supported by competent, credible evidence. State v. Metcalf, 9th Dist. No. 23600,2007-Ohio-4001, at ¶ 6, citing State v. Searls (1997),118 Ohio App.3d 739, 741. However, this Court will review the trial court's application of the law to the facts de novo. Metcalf at ¶ 6, citing Searls118 Ohio App.3d at 741.
 SUBSTANTIAL COMPLIANCE {¶ 7} Hoder argues that the trial court erred by failing to grant his motion to suppress the results of his toxicology screening. He contends that Officer Gilkison did not substantially comply with the procedures outlined in the Ohio Administrative Code ("OAC") governing collection and storage of urine samples. Hoder asserts that the chain of custody form does not accurately reflect the handling of the sample and that substantial compliance with the OAC was not established with respect to refrigeration of the sample.
 {¶ 8} With respect to urine samples, OAC 3701-53-05 mandates the following:
 "(A) All samples shall be collected in accordance with section 4511.19, or section 1547.11 of the Revised Code, as applicable.
 "* * *
 "(D) The collection of a urine specimen must be witnessed to assure that the sample can be authenticated. Urine shall be deposited into a clean glass or plastic screw top container which shall be capped, or collected according to the laboratory protocol as written in the laboratory procedure manual. *Page 4 
 "(E) Blood and urine containers shall be sealed in a manner such that tampering can be detected and have a label which contains the following information:
 "(1) Name of suspect;
 "(2) Date and time of collection;
 "(3) Name or initials of person collecting the sample; and
 "(4) Name or initials of person sealing the sample.
 "(F) While not in transit or under examination, all blood and urine specimens shall be refrigerated" (Emphasis added.)
 {¶ 9} "The purpose of these regulations is to ensure the accuracy of the alcohol test results." Burnside at ¶ 21, quoting State v.Dickerson (1986), 25 Ohio St.3d 64, 65-66. The Supreme Court of Ohio has held that results of alcohol screenings are admissible with a showing of substantial, rather than strict, compliance with OAC regulations.State v. Plummer (1986), 22 Ohio St.3d 292, 294. Courts may excuse minor procedural deviations from the mandates of the OAC regulations.Burnside at ¶ 34.
 {¶ 10} In order to call into question the accuracy of the alcohol screening, the defendant must file a pretrial motion to suppress the results. Id. at ¶ 24. The state then has the burden to demonstrate that the test was completed in substantial compliance with OAC regulations. Id. A presumption of admissibility arises if the state satisfies this burden. Id. In order to rebut the presumption, the defendant has the burden to show that he was prejudiced by the lack of strict compliance. Id., citing State v. Brown (1996), 109 Ohio App.3d 629,632.
 {¶ 11} Officer Gilkison collected the urine specimen from Hoder on January 27, 2008, at approximately 2:55 a.m. at the Wooster Police Station. Officer Gilkison then placed the lid on the container, sealed it with the tape provided in the toxicology kit, placed the sample in a plastic bag from the kit, and marked the bag with a biohazard sticker. He indicated the date and time of collection on the chain of custody form that is contained in the kit. Before sealing all the items *Page 5 
back in the box and placing the box in the refrigerator, Officer Gilkison made the following notation on the chain of custody form: "US Mail 1-28-08 200 PM." He explained, "they [the lab] are wanting it to be in U.S. mail the next day so I put 1-28 and the mail man usually comes by 2 o'clock."
 {¶ 12} After he completed the chain of custody form, he placed the form and the sample back in the toxicology kit box, sealed the box and placed it in the evidence refrigerator in the Wooster Police property room. He testified that he placed the box in the refrigerator within about five or ten minutes after he collected the sample at 2:55 a.m. However, he did not note on the chain of custody form that he placed the sample in the refrigerator; he only noted that the sample would be in the mail on January 28, 2008. Once the sample in the sealed box was locked in the refrigerator, Officer Gilkison had no further contact with it.
 {¶ 13} Cheryl Anderson, assistant property clerk for the Wooster Police, testified at the suppression hearing that once the officer locks the specimen in the evidence refrigerator, it must be removed by a property clerk because they are the only personnel with keys to the refrigerator. She said that she removed Hoder's sample in the morning on January 29, 2008, not the 28th. This transfer is not noted on the chain of custody form sealed in the toxicology box, but the witnesses for the state testified that it is indicated on the Wooster Police property receipt.[2] She then put the box on the mailbag so that the officer who picks up the mail could take it to City Hall to be stamped and placed in the outgoing mail. The chain of custody form does not include information with respect to the time the item was placed in transit in the mail and none of the *Page 6 
witnesses testified as to when it was placed in the mail or, that such information appears on the property receipt.
 {¶ 14} The next notation on the chain of custody form shows that the sample was received by Susan Angeles on January 31, 2008, at 4:10 p.m. She then placed it in the lock box in a refrigerator for storage on that same date at 4:18 p.m. On February 3, 2008, the sample was removed for testing, then placed in a locked freezer later that day.
 {¶ 15} The chain of custody form states that the sample was received by the laboratory with the specimen bottle seals intact.
 {¶ 16} Based on the above facts, we conclude that the state did not present sufficient evidence of substantial compliance with OAC 3701-53-05 with respect to refrigeration of the sample. Specifically, we do not have adequate evidence to calculate the amount of time the specimen went unrefrigerated from the moment it was removed by Anderson on January 29, 2008, until it was retrieved by the officer who took it to City Hall to be placed in the mail. The following testimony was elicited from Anderson at the suppression hearing:
 "[Prosecutor]: Do your records authenticate that you were the one who had contact with the (inaudible).
 "[Anderson]: Yes.
 "[Prosecutor]: And when did that happen?
 "[Anderson]: I removed it on the 29th.
 "[Prosecutor]: Do you have a time listed on there?
 "[Anderson]: No, just the date. It would have been in the morning because of the (inaudible).
 "The Court: I'm sorry the date was the 29th?
 "[Anderson]: Twenty-ninth." *Page 7 
 {¶ 17} Clearly, Anderson did not state an approximate time of removal. While the trial court found substantial compliance, it did not make a finding with respect to how long the specimen was unrefrigerated.
 {¶ 18} This Court may not make an assumption as to what time Anderson may have meant when she said "morning." The period of morning may be any time from midnight to noon. Moreover, none of the documentation the parties supplied to this Court states what time the sample was removed from the refrigerator, what time it was picked up by the other officer, or what time it was picked up by the mail carrier. Although Officer Gilkison's testimony may provide a basis from which to conclude that the sample was in the mail by approximately 2:00 p.m. on January 29, 2008, none of the testimony provides a basis from which to determine when it was removed from the refrigerator by Anderson.
 {¶ 19} Without knowing what time in the morning of January 29, 2008, Anderson removed the sample from the refrigerator, we cannot determine the length of time the specimen was unrefrigerated and whether that length of time falls within the purview of substantial compliance. Since the state did not present evidence of substantial compliance with the regulations, the presumption of admissibility did not arise. SeeBurnside at ¶ 24. Thus, Hoder did not have the burden to demonstrate prejudice. Id.
 {¶ 20} Accordingly, the trial court erred by failing to grant Hoder's motion to suppress the urine screen results.
 CONCLUSION {¶ 21} Hans Hoder's sole assignment of error is sustained. The judgment of the Wayne County Municipal Court is reversed.
Judgment reversed. *Page 8 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellee.
[1] On February 10, 2008, Hoder also received a citation for a violation of R.C. 4511.19(A)(1)(e), operating a vehicle with a prohibited alcohol concentration. The charge was dismissed at sentencing because Hoder was never arraigned with respect to the violation of R.C. 4511.19(A)(1)(e).
[2] The property receipt was not provided to this Court.
Dickinson, P.J., concurs.