[Cite as *State v. Thompson*, 2012-Ohio-2559.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    11CA0112-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| KRISTEN L. THOMPSON | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    10CR0579 |

DECISION AND JOURNAL ENTRY

Dated: June 11, 2012

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Kristen Thompson, appeals from her conviction in the Medina County Court of Common Pleas. This Court affirms.

I

{¶2} Thompson's car collided with another car on Bear Swamp Road, and the other driver was seriously injured as a result of the collision. Thompson was crying when a state trooper arrived and appeared to be intoxicated. She was taken to Summa Wadsworth-Rittman Hospital where she consented to a blood draw for purposes of blood alcohol content testing. Thompson admitted at the hospital that she had consumed several beers. The test results revealed that Thompson had a blood alcohol level of .310; almost four times the legal limit.

{¶3} A grand jury indicted Thompson on three counts of aggravated vehicular assault. Thompson filed two motions to suppress in which she argued that the State did not substantially comply with various provisions of the Ohio Administrative Code when it tested her blood. The

trial court held a hearing and permitted Thompson and the State to file written closing arguments after the hearing. The court ultimately determined that the State proved substantial compliance and denied Thompson's motions.

{¶4} After the court denied her motions, Thompson pleaded no contest to the three charges in her indictment. The trial court determined that two of the offenses were allied offenses of similar import, and the State elected to have Thompson sentenced on one count of aggravated vehicular assault, in violation of R.C. 2903.08(A)(1)(a). The court sentenced Thompson to two years in prison.

{¶5} Thompson now appeals from her conviction and raises four assignments of error for our review. For ease of analysis, we consolidate several of the assignments of error.

II

<u>Assignment of Error Number One</u>

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE OF THE BLOOD TEST WHEN THE STATE FAILED TO SUBSTANTIALLY COMPLY WITH THE RELEVANT MANDATORY REQUIREMENTS.

<u>Assignment of Error Number Two</u>

THE TESTIMONY OF MS. KOZLOWSKY SHOULD NOT BE CONSIDERED AND SHOULD NOT BE PERSUASIVE.

<u>Assignment of Error Number Three</u>

THE TESTIMONY OF MS. ADELMAN SHOULD NOT BE CONSIDERED AND SHOULD NOT BE PERSUASIVE.

{¶6} In her first three assignments of error, Thompson argues that the trial court erred by denying her motion to suppress. She argues that the State did not substantially comply with numerous provisions of the Ohio Administrative Code in conducting her blood alcohol test and

the court should have disregarded the testimony of two of the State's witnesses at the suppression hearing.

**{¶7}** The Ohio Supreme Court has held that:

> [a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

**{¶8}** Chapter 3701-53 of the Ohio Administrative Code contains Ohio's alcohol and drug testing regulations. If a defendant challenges the admissibility of a blood test in light of the regulations, the State bears the burden of showing that it substantially complied with the regulations in performing the test. *State v. Cutlip*, 9th Dist. No. 08CA009353, 2008-Ohio-4999, ¶ 10, quoting *Burnside* at ¶ 24. "A presumption of admissibility arises if the [S]tate satisfies this burden." *State v. Hoder*, 9th Dist. No. 08CA0026, 2009-Ohio-1647, ¶ 10. "[T]he burden then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance." *Burnside* at ¶ 24. "[M]inor procedural deviations" from the regulations are excusable under the substantial compliance standard. *Id.* at ¶ 34, quoting *State v. Homan*, 89 Ohio St.3d 421, 426 (2000).

**{¶9}**     The blood-testing procedure set forth in Ohio Adm.Code 3701-53-05:

> requires the [S]tate to (1) use an aqueous solution of a nonvolatile antiseptic on the skin, (2) use a sterile dry needle to draw blood into a vacuum container with a solid anticoagulant, (3) seal the blood container in accordance with the appropriate procedure, and (4) refrigerate the blood specimen when it is not in transit or under examination.  The purpose of these regulations is to ensure the accuracy of the alcohol-test results.

*Burnside* at ¶ 21.

> "Unless an accused, either through discovery or cross-examination at the hearing, points to facts to support the allegations that specific health regulations have been violated in some specific way, the burden on the state to show substantial compliance with those regulations remains general and slight." *State v. Embry*, 12th Dist. No. CA2003-11-110, 2004-Ohio-6324, ¶ 29.

*State v. Slates*, 9th Dist. No. 25019, 2011-Ohio-295, ¶ 10.  In those instances, the State may satisfy its burden through testimony describing how the regulations were followed.  *Id.* at ¶ 11-17.

**{¶10}**  Trooper John Beeler testified that he arrived at the scene of the accident shortly after 8:30 p.m. and saw Thompson sitting in the grass at the side of the road.  Thompson was crying, her eyes were glassy, her breath had a very strong odor of alcohol, and she had difficulty maintaining her balance once she stood.  Trooper Beeler accompanied Thompson to the hospital where she admitted that she had been drinking and consented to a blood draw.  Trooper Beeler provided the nurse at the hospital with a blood draw kit and witnessed the draw after the two opened the blood draw kit together.  He testified that the nurse, Linda Kozlowsky, used a non-alcoholic iodine prep pad to swab Thompson's arm, opened a package containing a fresh needle, withdrew the blood with the needle and deposited it into two tubes from the kit, and placed an evidence seal over each tube before handing them to Trooper Beeler.  Trooper Beeler specified that the seal Kozlowsky used was tamper-proof and that they both signed the seal after the draw along with the date and time of the draw.  The draw took place at 10:08 p.m. on August 14,

2010, and Trooper Beeler took possession of the tubes at 10:12 p.m. He then mailed the tubes to the Ohio State Highway Patrol Crime Lab at about 11:30 p.m.

{¶11} Kozlowsky could not remember the blood draw she performed on Thompson, but testified to the procedures she regularly uses in practice. Kozlowsky estimated that she had performed approximately three to four blood draws for the police per year over the course of her 20 years with the hospital. She testified that she uses a Povidone iodine prep swab on the crook of a patient's arm before drawing his or her blood because the iodine swab does not contain any alcohol. She then removes one needle from a supply box to which she has access. Kozlowsky confirmed that the needles she uses are dry, sterile, and kept in individually sealed packages. Kozlowsky then described the tubes she customarily receives from the blood draw kits provided by the Ohio State Highway Patrol. She explained that the tubes are glass or plastic, have a gray stopper at the end, and contain sodium chloride. Kozlowsky testified that the sodium chloride is a dry, white powder anticoagulant that preserves the blood she draws into the tubes and prevents it from clotting. Once she draws a patient's blood into a tube, Kozlowsky testified, she seals the tube over the top of the stopper with a tamper-proof evidence seal that she and the officer involved have signed. Kozlowsky identified her handwriting on the tubes containing Thompson's blood.

{¶12} Emily Adelman, a criminalist in the toxicology unit of the Ohio State Highway Patrol Crime Lab, testified that she tested Thompson's blood samples. She testified that her lab is certified by the Ohio Department of Health and her individual permit from the Health Department was issued on February 20, 2010. Adelman stated that the Health Department routinely surveys her lab for compliance purposes and that the most recent survey indicated the

lab was compliant. She further verified that she keeps an alcohol procedural manual and toxicology procedural manual at her work station and is familiar with both books.

{¶13} Adelman testified that the blood samples her lab receives are immediately placed in secure refrigeration upon their arrival and remain there until testing can occur. The lab issues each sample a unique identifier code so that each person who handles the sample in the lab can scan the code and the lab can track the whereabouts of the sample at all times. Adelman testified that the lab received Thompson's blood sample on August 19, 2010, and she removed it from refrigeration on August 20, 2010.

{¶14} Adelman identified her initials on the first tube of Thompson's blood and testified that she initials tubes after she cuts them open to evidence that she was the one to break the tamper-proof seal. Adelman verified that the gray stopper tubes from the Ohio State Highway Patrol kits are vacuum sealed and contain an anticoagulant that prevents clotting. Adelman removed a portion of Thompson's blood, placed the blood into a vial, returned the remaining blood in the tube to refrigeration, and placed the vial into an instrument for purposes of gas chromatography testing. Adelman explained that she is required to verify that the instrument she uses for gas chromatography testing is properly calibrated and that she verifies the calibration with every ten samples. Adelman had to perform two tests on Thompson's blood because after she performed the first test Adelman conducted one of her required calibrations and determined that the instrument was not properly calibrated. The second test revealed that Thompson had a blood alcohol content level of .310. Aldeman indicated that after she performs a test on a blood sample from one of her vials, she discards the vials. She also testified, however, that after testing, her lab retains the blood that remains in the tubes for semi-permanent storage in secure refrigeration.

{¶15} In two of her assignments of error, Thompson argues that the trial court should have disregarded the testimony of Kozlowsky and Adelman because neither could recall Thompson's particular case. Instead, both testified about their customary practices and identified certain evidence that specifically related to Thompson's case, such as Kozlowsky's initials on the tubes of Thompson's blood and Adelman's reported results of the tests she performed on Thompson's blood. Thompson argues that the court could not consider their testimony because (1) neither woman testified as an expert, and (2) testimony offered in the absence of personal knowledge amounts to inadmissible hearsay.

{¶16} Thompson fails to cite any authority in support of her argument. *See* App.R. 16(A)(7). She also makes no attempt to explain why Kozlowsky and Adelman could not have testified pursuant to Evid.R. 406. *See* Evid.R. 406 (habit evidence relevant "to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."); *Brunswick v. Dove*, 9th Dist. No. 02CA0059-M, 2003-Ohio-2424, ¶ 6-7; *State v. Fazzone*, 9th Dist. No. 19115, 1999 WL 194495, *2 (Mar. 31, 1999). Even assuming that the State introduced hearsay evidence through Kozlowsky and Adelman, however, "judicial officials at suppression hearings 'may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.'" *State v. Edwards*, 107 Ohio St.3d 169, 2005-Ohio-6180, ¶ 14, quoting *United States v. Raddatz*, 447 U.S. 667, 679 (1980). The trial court did not err by relying on the testimony and evidence the State introduced through Kozlowsky and Adelman. Accordingly, Thompson's second and third assignments of error lack merit.

{¶17} In her first assignment of error, Thompson argues that the State did not substantially comply with numerous provisions of the Ohio Administrative Code. She argues that the State failed to prove: (1) Adelman's lab maintained at least one copy of the written

procedure manual (Ohio Adm.Code 3701-53-01(B)); (2) Adelman confirmed her positive test result through a dissimilar analytical technique (Ohio Adm.Code 3701-53-03(A)); (3) Kozlowsky collected Thompson's sample using an aqueous solution of a non-volatile antiseptic (Ohio Adm.Code 3701-53-05(B)); (4) Kozlowsky used a sterile, dry needle (Ohio Adm.Code 3701-53-05(C)); (5) Kozlowsky deposited her blood into a vacuum container with a solid anticoagulant (Ohio Adm.Code 3701-53-05(C)); (6) Kozlowsky sealed the container with a tamper-proof seal (Ohio Adm.Code 3701-53-05(E)); (7) Thompson's blood was properly kept refrigerated (Ohio Adm.Code 3701-53-05(F)); (8) Adelman's lab retained the samples she tested (Ohio Adm.Code 3701-53-06(A)); (9) Adelman's lab successfully completed a national proficiency testing program (Ohio Adm.Code 3701-53-06(B)); (10) Adelman's lab maintained a written procedural manual of all analytical techniques (Ohio Adm.Code 3701-53-06(C)); and (11) Adelman was operating under the general direction of an individual with a laboratory director's permit (Ohio Adm.Code 3701-53-07(A)).

{¶18} As the State correctly notes, Adelman was not required to confirm her positive test result through a dissimilar analytical technique because that requirement only applies to tests of controlled substances. Ohio Adm.Code 3701-53-03(B). Alcohol may be analyzed through gas chromatography alone, which is the method Adelman employed here. *See* Ohio Adm.Code 3701-53-03(A). As to Thompson's remaining arguments, she never pointed to any facts to show that the State violated any of the foregoing regulations in any specific way. Thus, the State's burden to demonstrate substantial compliance here was "general and slight" and could be satisfied through testimony. *Embry*, 2004-Ohio-6324, at ¶ 29; *Slates*, 2011-Ohio-295, at ¶ 11-17.

{¶19} The testimony in the record supports the conclusion that the State demonstrated substantial compliance. Kozlowsky testified that she used an iodine-based, non-alcohol solution

and sterile, dry needle on Thompson before she then transferred Thompson's blood to two vacuum sealed tubes containing a solid anticoagulant and closed the tubes with a tamper-proof seal. Trooper Beeler witnessed the blood draw and corroborated Kozlowsky's testimony. Adelman testified that she had alcohol and toxicology procedural manuals authored by the director of toxicology at her work station, her lab was certified by the Health Department, she was certified by the Health Department, and her direct supervisor reviews all the results of her testing. She also testified that her lab refrigerates all samples at all times, except when the samples are being tested, and retains the remainder of positive blood samples after testing in semi-permanent storage. The samples were transferred directly from Kozlowsky to Trooper Beeler to the Ohio State Highway Patrol Crime Lab where they were logged into evidence with unique identifiers and immediately refrigerated.

{¶20} The trial court determined from the foregoing testimony that the State proved substantial compliance. In her eleven separate challenges to the State's compliance, Thompson did not set forth a single citation to any case law. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). Her argument only consists of unsupported allegations. For instance, she argues that the State failed to show substantial compliance because Adelman did not sufficiently describe the manuals in her work station, the manufacturer of the needle Kozlowsky used might not have properly sterilized it, sodium chloride might not be a "solid" anticoagulant, and Kozlowsky could not have known if the seals she used were tamper-proof because she never tried to remove such a seal without breaking it. Thompson's speculative, unsupported arguments are unavailing. Upon our review of the record, we conclude that the trial court did not err in concluding that the State established substantial requirements. *See Slates* at ¶ 11-17. As such, the success of Thompson's motion depended upon

her proving that she "was prejudiced by anything less than strict compliance." *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 24. Thompson limited her argument on appeal to substantial compliance. She did not go on to discuss prejudice. Accordingly, this Court will not engage in a prejudice analysis on her behalf. *Cardone* at \*8.

{¶21} The trial court properly relied upon the testimony of Kozlowsky and Adelman, and did not err by denying Thompson's motion to suppress. Thompson's first, second, and third assignments of error are overruled.

Assignment of Error Number Four

MANDATORY MINIMUM SENTENCES ARE A VIOLATION OF APPELLANT'S CONSTITUTIONALLY PROTECTED RIGHTS.

{¶22} In her fourth assignment of error, Thompson argues that the court violated her constitutional rights by imposing a mandatory minimum sentence. She raises both a facial and as-applied challenge to the constitutionality of mandatory minimum sentences issued in accordance with R.C. 2903.08(D)(1). Specifically, she argues that mandatory minimum sentences violate the separation of powers doctrine, ignore proportionality, violate notions of due process, and amount to cruel and unusual punishment.

{¶23} At the outset, we note that "[a]n enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." *State v. Cook*, 83 Ohio St.3d 404, 409 (1998), quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus. Thompson pleaded no contest to a violation of R.C. 2903.08(A)(1)(a). R.C. 2903.08 provides that a trial court "shall impose a mandatory prison term on an offender who is convicted of or pleads guilty to a violation of division (A)(1) of this section." R.C. 2903.08(D)(1).

**{¶24}** This Court recently considered a constitutional challenge to a mandatory minimum sentence in *State v. Banks*, 9th Dist. No. 25279, 2011-Ohio-1039. In upholding the mandatory minimum sentence imposed in *Banks*, we held as follows:

> It is well settled that the General Assembly has the plenary power to prescribe crimes and fix penalties. Mandatory sentencing laws enacted pursuant to this authority do not usurp the judiciary's power to determine the sentence of individual offenders. There is no federal constitutional impediment to mandatory minimum prison terms. Such minimum sentences are properly within the scope of the power of the General Assembly.

(Internal citations and quotations omitted.) *Banks* at ¶ 48. *Banks* recognized that the legislature has the authority to prescribe mandatory prison terms for offenses it finds to be particularly severe or dangerous. *Id.* While the statute in *Banks* involved the inherently dangerous assembly of methamphetamine, the plain language of R.C. 2903.08(D)(1) supports the conclusion that the legislature is equally troubled by the idea of a person who operates a vehicle while intoxicated and proximately causes serious physical harm to another person in the process. "Driving under the influence of alcohol is an activity which carries with it a substantial danger of damage to property and serious injury, even death, for innocent bystanders. It is wholly reasonable that, in seeking to deter these serious consequences, the legislature enact serious penalties." *State v. Knisely*, 6th Dist. No. H-94-044, 1995 WL 490937, *3 (Aug. 18, 1995), *rev'd on other grounds*, *In re Adm. License Suspension Cases*, 76 Ohio St.3d 597 (1996). We, therefore, reject Thompson's facial challenge to the mandatory minimum sentence the court imposed pursuant to R.C. 2903.08(D)(1).

**{¶25}** Further, this Court rejects Thompson's challenge that her mandatory minimum of two years is unconstitutional as applied. Thompson's blood alcohol level was almost four times the legal limit when she struck the victim in this case. The victim suffered significant injuries, including a broken femur and shattered heel. She also incurred severe financial difficulties

because her injuries affected her ability to work and Thompson did not have insurance when she caused the collision. Moreover, in sentencing Thompson to two years, the trial court noted that it revoked Thompson's bond during the course of the proceedings because she violated one of her bond conditions. Specifically, she was photographed consuming alcohol while attending a concert at Blossom Music Center. Thompson's mandatory two-year term "[does] not run afoul of constitutional principles." *Banks* at ¶ 48. Her fourth assignment of error is overruled.

## III

{¶26} Thompson's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR.


APPEARANCES:

MICHAEL J. CALLOW, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and Matthew Kern, Assistant Prosecuting Attorney, for Appellee.