[Cite as *Eckert v. Summit Cty. Pub. Health*, 2016-Ohio-7076.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| HARRY J. ECKERT | | C.A. No. 27844 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| SUMMIT COUNTY PUBLIC HEALTH | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CV 2014 09 4444 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2016

WHITMORE, Judge.

{¶1} Appellant, Summit County Public Health District ("Health District"), appeals from an order of the Summit County Court of Common Pleas that vacated a decision by the State Personnel Board of Review ("Board") to remove Appellee, Harry James Eckert, from his employment. We affirm.

I

{¶2} Eckert was employed by the Health District as an environmental specialist. One of the functions of the Health District is to conduct air quality inspections for the Ohio Environmental Protection Agency ("Ohio EPA"), including inspections of gas stations, formally known as gas dispensing facilities ("GDF"). Eckert's job responsibilities included performing these inspections.

{¶3} GDF inspections are conducted in accordance with Ohio EPA standards. Inspections include review of mandatory records, visual inspection of gas dispensing equipment,

and observation of pressure and leakage tests performed by outside vendors. The inspections and tests are designed to minimize the release of fuel vapors into the air, which is hazardous to human health and the environment. The Ohio EPA can impose significant fines on owners who fail to comply with EPA inspection standards.

{¶4} In January 2013, the Health District received a complaint from gas station manager Rahif Faris concerning Eckert's interactions with Faris during an air quality inspection at Faris' station on December 17, 2012. Health District assistant director Sam Rubens and supervisor Wallace Chambers met with Eckert about the complaint on January 15, 2013. After the meeting, Rubens and Chambers investigated, but did not impose corrective action.

{¶5} In May 2013, the Health District received a complaint from Akron Children's Hospital concerning the impressions of Dr. Zaid Khatib during a ride-along with Eckert for an air quality inspection on February 20, 2013. Khatib, a resident at the hospital, was assigned to ride along with Eckert as a public health experience for doctors in training.

{¶6} Following the hospital's complaint, the Health District served a notice of proposed discipline to Eckert, and held a pre-disciplinary hearing before the Health Commission. The hearing officer issued a report finding "no just cause for discipline" on two of the charges in the pre-disciplinary notice, and finding "just cause for discipline" on three charges. The Health Commission ordered removal based on charges of: (1) discourteous treatment of the public; (2) breach of conflict of interest/ethics policy; and (3) discrimination based on national origin or ethnicity.

{¶7} Eckert appealed to the Board. An administrative law judge ("ALJ") heard the appeal over two days. Some witnesses testified during the hearing. Others, including Eckert, testified by video deposition. The ALJ issued a report and recommendation after post-trial

briefs. The ALJ recommended removal from employment. Eckert filed objections. In a two-sentence decision, the Board adopted the ALJ's recommendation.

{¶8} The ALJ, and therefore the Board, found just cause for removal under R.C. 124.34 on two of the five charges originally asserted by the Health District, specifically: (1) discourteous treatment of the public and (2) discrimination in the form of comments relating to national origin. The Board found that the charges were supported by at least two of numerous incidents put forth by the Health District: (1) Eckert's interaction with Faris in December 2012 and (2) the impressions of Khatib during the ride-along in May 2013. The Board found that the two incidents justified removal from employment notwithstanding that Eckert had "little if any cognizable discipline prior to his removal."

{¶9} Eckert appealed to the common pleas court. The common pleas court reviewed the evidence and concluded that "[a]lthough the evidence clearly suggest[ed] that, at times, Eckert lacked in judgment * * * the County has failed to prove" that the allegations of discourteous treatment of the public, breach of conflict of interest/ethics policy and discrimination/harassment were "supported by reliable, probative, and substantial evidence." On this basis, the court of common pleas vacated the decision to remove Eckert from employment. The trial court's decision is stayed pending the Health District's appeal to this Court. In this appeal, the Health District raises one assignment of error for our review.

II

Assignment of Error

WHETHER THE COURT OF COMMON PLEAS ABUSED ITS DISCRETION AND IMPROPERLY SUBSTITUTED ITS JUDGMENT FOR THAT OF THE STATE PERSONNEL BOARD OF REVIEW WHEN IT VACATED THE BOARD'S UNANIMOUS ORDER AFFIRMING ECKERT'S REMOVAL.

{¶10} In its only assignment of error, the Health District argues, inter alia, that the court of common pleas "abused its discretion by failing to consider all the evidence." We disagree.

{¶11} The assignment of error requires us to keep close in mind the different scopes of review available to the court of common pleas and an appellate court. Under R.C. 119.12, a common pleas court, in reviewing an order of an administrative agency, must consider the "entire record" to determine whether "reliable, probative, and substantial evidence" supports the agency's order and the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980).

{¶12} The common pleas court's review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence[,] and the weight [to be given it]." *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give "due deference to the administrative [agency's] resolution of evidentiary conflicts," and "when the evidence before the court consists of conflicting testimony of approximately equal weight the court should defer to the determination of the administrative body * * *." *Conrad* at 111. "However, the findings of the agency are by no means conclusive." *Id.* Thus, it is clear that although a court of common pleas may not blatantly substitute its judgment for that of the administrative agency, the court must weigh evidence of record, including the credibility of witnesses. *Id.* at 110; *see Smith v. Richfield Twp. Bd. of Zoning Appeals*, 9th Dist. Summit No. 25575, 2012-Ohio-1175, ¶ 33 (considering an administrative appeal under R.C. 2506).

{¶13} A court of common pleas may "reverse, vacate, or modify the administrative order" when "the court, in its appraisal of the evidence, determines that there exist legally

significant reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination * * * ." *Conrad* at 111. "Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight." *Id.* "Likewise, where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order." *Id*. at 111-112.

{¶14} An "appellate court's review is even more limited than that of the trial court." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Unlike the court of common pleas, this Court is not permitted to weigh the evidence. *Id.* We may not reconsider the credibility of witnesses. *See id.* "While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court." *Id.* On appeal, this Court determines only if the court of common pleas abused its discretion in determining whether reliable, probative, and substantial evidence supports the agency's order. *Id*. An appellate court will not substitute its judgment for that of the court of common pleas unless the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Absent an abuse of discretion, we must affirm the trial court's judgment, even if we would not reach the same conclusion. *Pons* at 621.

{¶15} Applying these standards, we believe that the common pleas court used the correct scope of review in reversing the administrative order of the Board. In a thorough opinion, the court of common pleas examined the evidence and testimony of all witnesses, explained any relationship between the testimony and the charges against Eckert, and ultimately concluded that the charges of discourteous treatment of the public, breach of conflict of

interest/ethics policy and discrimination/harassment were "not supported by reliable, probative, and substantial evidence."

{¶16} The Health District argues that the court of common pleas failed to properly weigh the evidence and abused its discretion in failing to consider documents and testimony that constituted hearsay evidence. The Health District contends that the exclusion of hearsay evidence "is inconsistent with Ohio administrative law." In support of its argument, the Health District points out that hearsay may be admitted in Board hearings if a proper "foundation establishing the reliability of the testimony and its necessity" is laid. Ohio Adm. Code 124-9-02 provides that "[t]he board may permit the introduction of evidence otherwise excludable as hearsay. A foundation, establishing both the reliability of the testimony and its necessity, shall be laid before hearsay [is] admitted."

{¶17} However, despite the requirement to establish a foundation for the reliability and necessity of hearsay testimony to make that testimony eligible for admission in evidence, the Health District does not identify any disputed document or testimony, or any portion thereof, for which a proper foundation was laid. *See id*. Absent a proper foundation for the disputed evidence, we cannot hold that the common pleas court abused its discretion in declining to consider evidence or portions thereof consisting of hearsay.

{¶18} Moreover, the only specific hearsay finding that the Health District challenges is the court's comment that the testimony of gas station manager Faris is "fraught with hearsay." Eckert's interaction with Faris in December 2012 was one of two incidents upon which the Board based its findings upholding the charges of discourteous treatment of the public and discrimination.

**{¶19}** Faris, who previously lived in Jordan and Kuwait, is the managing principal of a gas station owned by his wife. In general, Faris complained that Eckert was unprofessional during his inspection of Faris' gas station in December 2012. Faris arrived late after Eckert began the inspection. Faris testified that, upon arrival, he conferred with station manager Mary Lewis, who had been present but was unprepared to show Eckert required documentation. Faris accused Eckert of making improper statements to Lewis. Faris also accused Eckert of making discriminatory statements to Faris' wife about foreigners. Eckert denied the accusations when confronted by Faris and also at the administrative hearing. Neither Lewis nor Faris' wife testified at the hearing.

**{¶20}** The Health District merely argues that "there were reasons why these women did not testify" and contends that the court should therefore have considered an out-of-court affidavit and interview notes concerning the absent witnesses. However, the fact that reasons may have existed for not producing these witnesses does not establish the requisite reliability for the admission of hearsay evidence concerning their interactions with Eckert in December 2012. Moreover, we have recognized that "it is unreasonable to give credibility to [a] hearsay statement and deny credibility to [a] claimant testifying in person." *Green v. Invacare Corp.*, 9th Dist. Lorain No. 92CA5451, 1993 WL 175478, *2 (May 26, 1993), citing *Taylor v. Bd. of Review*, 20 Ohio App.3d 297, 299 (8th Dist.1984). Thus, the court of common pleas did not abuse its discretion if it gave less weight to the hearsay evidence and more weight to Eckert's denial of the accusations attributed to Lewis and Faris' wife.

**{¶21}** The Health District also argues that the court of common pleas did not reasonably evaluate the non-hearsay testimony concerning Eckert's interactions with Faris in December 2012 and his interactions with Khatib in February 2013. We disagree.

**{¶22}** Aside from the discrimination charge, the Board also cited the incident with Faris to uphold its finding of discourteous treatment of the public. Faris complained that Eckert mistreated him during the inspection. Specifically, Faris complained that Eckert "comes so mad" to inspections and is "not very nice to [Faris]." When Faris was late to the inspection in December 2012, Eckert told Faris that it was "about time * * * you brought your ass here." Faris "took it as a joke as that's how [Eckert] jokes." Faris testified that he asked Eckert not to show him broken equipment in front of customers. He said that Eckert was "not polite" and that his discourse did not always pertain to the job. Faris was upset that Eckert "talk to me as six years old" when explaining how to file the correct paperwork. He also was offended that Eckert used his pointer finger to make a beckoning gesture to Faris.

**{¶23}** The court of common pleas identified several legally significant factors that diminished the relevance and credibility of Faris' testimony. In addition to finding Faris' testimony "fraught with hearsay," the court found, among other things, that: (1) portions of Faris' testimony were vague and unclear; (2) the Health District did not produce potentially corroborating evidence identified by Faris (e.g., a surveillance video or testimony from the testing vendor, Faris' wife, and the station manager); (3) Faris' chief complaint was about a broken part and the associated cost, which he admitted were not caused by Eckert; (4) Faris' station did not pass the EPA testing; and (5) Faris' station did not have its paperwork ready for inspection. The court also noted that Faris did not complain until he was urged to do so by Eckert's co-worker with whom there was "evidence of bad blood."

**{¶24}** Contrary to the Health District's claim, with respect to the incident with Faris the court of common pleas did precisely what the scope of its review requires. The court appraised the evidence and identified several "legally significant reasons for discrediting certain evidence

relied upon by the administrative body, and necessary to its determination * * * ." *See Conrad*, 63 Ohio St.2d at 111. Under these circumstances, the court did not abuse its discretion.

{¶25} The incident with Khatib in February 2013 was the second of the two main bases for Eckert's termination. Khatib initially claimed that on the drive to the site, Eckert told him that he might see stickers on the gas pumps with a cartoon drawing of an extraterrestrial alien head with a red circle and a dash through it, which was a signal to not buy gas from the station because it was foreign owned. Khatib testified that Eckert later pointed out some alien stickers on a gas pump. Khatib said that he believed that Eckert endorsed the purpose of the stickers:

> But he pointed them out to me and said, see that, I would never shop at this place or be a customer here. The exact context, I don't remember the words, but basically something to the effect he pointed it out and said I wouldn't go here.

{¶26} Khatib emphasized that what really bothered him about Eckert was the discussion about the alien stickers. In addition to the story about the alien stickers, however, Khatib claimed that Eckert made a comment "to the effect of, you know, like little things like this, you know, usually we let pass but, you know, in someone like this or, you know, these foreign guys, I might not let it slide."

{¶27} The court of common pleas found that Khatib's testimony was unreliable because his account changed multiple times and became markedly "more innocuous." Khatib initially claimed in a May 1, 2013 email to Health District director Robert Hasenyager that Eckert kept alien stickers on his clipboard and would place them on gas pumps himself. Khatib soon retracted this version of events. In another email dated May 3rd, after Hasenyager pressed him for details, Khatib revised his account, saying that Eckert never placed any alien stickers nor did Khatib see any alien stickers in Eckert's possession. Khatib further withdrew from his initial account in a May 9th email, stating that he could not definitively state whether Eckert meant that

he placed the alien stickers personally or if he was just talking about people in general who did place them. Khatib's May 2013 emails did not mention the assertion that Eckert raised the subject of the alien stickers during the drive to the inspection site. Regarding his claim that Eckert said that he would not patronize stations where alien stickers were present, Khatib modified his story and testified that he was not sure if Eckert was saying that he would not patronize a station if he saw the stickers, or if that is what other people might do if they saw the stickers.

{¶28} Eckert addressed the alien sticker incident in his hearing testimony. Contrary to Khatib's assertion that the stickers were discussed on the way to the inspection site, Eckert testified that the topic arose at the gas station. He testified that Tracy Weston, a representative of Giant Oil who was at the station, called him over to a gas dispenser while he was conducting his inspection. Eckert testified that Weston pointed to a sticker on the green dispenser nozzle and asked if Eckert had ever seen one. According to Eckert, he had not. Eckert testified that the sticker was a little bigger than a half dollar, depicting a cartoon space alien, with a line through it like a highway sign warning against something. Eckert said that Weston told him that she had seen them on almost all of the stations for which she was responsible. Eckert testified that, because he did not know what the stickers were for, Weston proceeded to tell him that people would place alien stickers on the pump nozzles which would alert an individual that was purchasing gas there to not buy gas from that facility because it was foreign owned. He testified that he explained to Khatib "almost verbatim what Tracy [Weston] had told me." He testified that he used the phrase "foreign owned" in describing what Weston told him because that is the phrase Weston had used.

{¶29} At the hearing, Harold Whaples, a petroleum services worker, testified that he saw the same alien stickers witnessed by Eckert and Khatib. Like Eckert, he testified that Weston told him about the stickers and their significance. He did not discuss the stickers with Eckert.

{¶30} In addition to his testimony about the alien stickers, Eckert testified regarding Khatib's claim that Eckert said that he would not let small things slide at stations where the owner was a foreigner. Eckert denied making the statement. He claimed to use the same Ohio EPA standards at the station he visited with Khatib as he did at other stations. That station did not pass its tests that day, but did pass on a retest.

{¶31} The common pleas court found that Khatib's testimony about the alien stickers was inherently unreliable and deserved little or no weight because his story changed significantly with each retelling. The court observed, "While it is understandable that Khatib would take offense to the nature of the stickers, he seems to have at least originally attributed their existence to Eckert and then backed off of that position altogether."

{¶32} Having found Khatib's testimony inconsistent with respect to the stickers, the court went on to find that there was "no [credible] evidence presented" that Eckert said that "he would not let some things slide with a station that was foreign-owned." The court gave little weight to Khatib's testimony in that regard and instead credited Eckert's testimony that he did not make the statement and did not treat any station differently from another. The court also found no evidence that any station actually was treated preferably over another. The common pleas court observed that the Board drew an incorrect inference from Khatib's testimony that Eckert had the authority or ability to "let some things slide." The common pleas court stated, "there was considerable testimony to show that Eckert merely recorded the testing results; he did

not perform the tests himself." Moreover, Eckert testified that his responsibilities included recommending repairs to equipment, but that he could not make GDF owners replace equipment. The common pleas court thus found that "it would seem that Eckert had no power or authority to 'let little things slide' or in essence treat stations any differently."

{¶33} Contrary to the Health District's claim, the court of common pleas acted within its authority in discounting Khatib's testimony. The Supreme Court of Ohio has established that a court of common pleas has discretion to discredit evidence when the witness' testimony is internally inconsistent. In *Conrad,* the Court explained that when a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight. *Conrad*, 63 Ohio St.2d at 111. Moreover, the common pleas court may reverse a decision of the administrative body when it is based on an incorrect inference. *Id.* Thus, the court of common pleas was within its discretion to give little or no weight to Khatib's testimony, given his inability to recount a consistent version of events, and based on the Board's unsupported inference that Eckert had the ability to treat station owners differently based on national origin or ethnicity. Indeed, the Health District has not provided any evidence or argument to show that Eckert did have the ability to treat station owners differently.

{¶34} The court also did not err in adopting Eckert's version of events in lieu of Khatib's account. The court of common pleas must defer to the determination of the administrative body only when "the evidence before the court consists of conflicting testimony of approximately equal weight." *Id.* When a witness' testimony is given no weight because of "legally significant" reasons such as inconsistency, the court of common pleas acts in accordance with its statutory power under R.C. 119.12 in electing to not give credence to the testimony of

that witness, and in relying instead upon the testimony of an opposing witness whose version of events is more credible on the subject and therefore carries greater weight. *Id.* at 111-112. Under these circumstances, we cannot conclude that the trial court abused its discretion in giving Eckert's testimony more credence than Khatib's testimony.

{¶35} The Health District also argues that the common pleas court failed to consider "rebuttal evidence" to Eckert's claim that he did not discriminate against any gas dispensing facility or use racial language. The Health District emphasizes the testimony of Robert Colley, a third-party tester, who claimed that Eckert used terms such as "foreigners" or "Arabs" or "towel heads," and would comment at certain stations "at least this is a white guy this time." Eckert agreed that using the terms "towel head" or "Arabs" would be discrimination, but specifically denied using those terms.

{¶36} The court of common pleas found Colley's testimony "less than credible." The court found, among other things, that although Colley attributed derogatory phrases to Eckert, Colley himself used the terms "Arab" and "white guys" to refer to station owners, and that there was some evidence that the other gas station inspector who was Eckert's colleague was the individual who used the term "towel head." The court also took notice that there was no corroborating evidence and no other witnesses who attributed this language to Eckert. In fact, the transcript is unclear that Colley himself heard Eckert use any of these terms. When asked for a specific example of Eckert's conduct, Colley described only one incident when Eckert went into a station where he allegedly persuaded the owners to change old gas pump nozzles and said "Arabs [don't] want to replace their stuff." However, Colley admitted that he was not in the store with Eckert when Eckert supposedly used the discriminatory language. Colley testified that his testing company lost the station's business after the owners agreed to pay for new nozzles

and then got upset about spending the money and accused Colley of working with Eckert to convince them to purchase expensive new equipment. So, while Colley was aware of the station owner's reaction following the conversation with Eckert, his testimony regarding what Eckert said is hearsay without any foundation as to its reliability. Thus, the common pleas court was entitled to disregard it or assign it little weight.

{¶37} The court of common pleas weighed the "rebuttal evidence" and Colley's credibility and found it lacking. In so doing, the court acted within the scope of its authority under R.C. 119.12. Accordingly, the common pleas court did not abuse its discretion in discounting this evidence.

{¶38} The Health District also argues that the common pleas court did not correctly weigh testimony that Eckert used the term "30 percenters" or "foreign owned." Eckert remembered using the term "30 percenters" but not "foreign born" to describe GDFs in conversation with his supervisors, but not during inspections. Rubens, who testified that he previously supervised Eckert and met with Eckert on January 15, 2013, testified that Eckert was instructed at the meeting not to use those terms. He further testified that "30 percenters" is a term that would accurately reflect that 30 percent of GDFs are foreign owned. He testified that Eckert used the term during the January 2013 meeting. Eckert testified that he used the term "foreign owned" during the discussion with Khatib regarding the alien stickers because he was parroting what Weston told him.

{¶39} The court of common pleas found that any use of the terms "foreign owned" and "30 percenters" did not provide reliable, probative, and substantial evidence of discrimination, because they "are actually accurate terms used to describe ownership rather than the actual ethnicity of the owners themselves." The Health District asks this Court to reexamine and

reweigh all of the evidence and, from the tenor of the whole record, conclude that Eckert did not use the terms as factual descriptors, but rather as discriminatory labels. This we may not do. Appellate courts may not weigh the evidence and judge credibility in order to substitute our judgment for that of the common pleas court. *Pons*, 66 Ohio St.3d at 621. Accordingly, we cannot find that the trial court abused its discretion in evaluating testimony concerning Eckert's use of the terms "30 percenters" or "foreign owned."

{¶40} To the limited extent that the Health District challenges the finding of the court of common pleas with respect to the charge of conflict of interest, the challenge lacks merit. As an initial matter, it is unclear what facts the Health District asserts as the basis for this charge. Regardless, the trial court correctly determined that any such evidence is "scant." Although Eckert and other witnesses testified that Eckert approached individuals about an outside business interest involving the marketing of natural gas, it is undisputed that Eckert did not, in fact, move forward with any plans for a business venture. Additionally, the record contains only vague accusations, but no proof, that Eckert had a policy of recommending particular third-party testing vendors or that he had a financial interest in any vendor. Accordingly, the court of common pleas did not err in finding a lack of reliable, probative, and substantial evidence to support this charge.

{¶41} The Health District argues the court of common pleas misinterpreted the Health District's policy 403 regarding progressive discipline. Under the policy, the only grounds that justify removal from employment are "Group 3" offenses, which are "of a very serious and possibly criminal nature and which cause a critical disruption to the productivity, efficiency, and/or morale of the organization." The Health District argues that the court of common pleas "implicitly held" without any supporting authority that policy 403 "sets forth a mandatory

progressive discipline policy." On this basis, the Health District contends that the trial court erroneously concluded "that Eckert should not have been terminated for what was characterized by Eckert as a first offense." However, the trial court did not make any findings regarding policy 403. Rather, the court based its ruling on a lack of "reliable, probative, and substantial evidence." Accordingly, we decline the Health District's invitation to address implicit findings not expressed in the court's opinion.

{¶42} The Health District also argues that the common pleas court misinterpreted policy 411. Under policy 411, "No person or persons responsible to the Board of Health and its officers and members shall discriminate against any citizen requesting/needing services * * * on the basis of race, religion, color, ethnicity, national origin * * *." Thus, policy 411 prohibits discriminatory conduct toward the public.

{¶43} The Health District claims that Eckert engaged in discrimination based on national origin or ethnicity. In finding that the charge of discrimination was unsupported by "reliable, probative, and substantial evidence," the court of common pleas looked to a dictionary definition to define discrimination as "unfair treatment or denial of normal privileges to persons" belonging to protected classifications and a "failure to treat all persons equally" without reasonable distinction. The common pleas court then found that "discrimination requires action."

{¶44} The common pleas court found that "[e]vidence must be presented to demonstrate that a particular individual was unfairly treated as compared to others." The court concluded that "no evidence was presented to show that foreign station owners were subjected to disparate treatment * * * [i]ndeed, no one was identified, came forward, or testified that he or she was treated differently based upon his or her ethnicity or country of origin."

**{¶45}** The Health District asserts that the court "incorrectly held that discrimination requires a showing of discriminatory effects to be actionable." The Health District misstates the court's holding. The court actually found that discrimination requires "action" in the form of unequal or unfair treatment. The Health District conceded in its opening appellate brief that discrimination requires a finding that "Eckert acted consistently with [a] discriminatory policy." Thus, the Health District essentially agrees with the trial court that discrimination requires "action."

**{¶46}** The Health District argues that Eckert did act consistently with a discriminatory policy. In support of its argument, the Health District cites Eckert's purported comments to Khatib, including Eckert's alleged statements that he would not let little things slide with foreign owned gas stations or patronize them. However, as discussed above, we find that the court of common pleas did not abuse its discretion in holding that the claim that Eckert made these statements or acted in a manner consistent with them is not supported by reliable, probative, and substantial evidence. Also in support of its argument, the Health District cites Eckert's reference to "30 percenters" and "foreign born" gas station owners during the meeting on January 15, 2013. We also find, for the reasons already explained, that the trial court did not abuse its discretion in determining that these terms were not substantial and probative evidence of discrimination. As such, we do not reach the Health District's argument that these incidents constitute "direct evidence" of discrimination.

**{¶47}** The Health District also cites Faris' testimony that Eckert was rude to him. However, rudeness by itself is not evidence of discrimination based on national origin or ethnicity. Moreover, as we have discussed, the common pleas court did not err in giving little weight to Faris' testimony.

{¶48} The Health District disagrees with the ruling of the common pleas court and asks us to evaluate the evidence considering the entire record, including hearsay testimony, and the cumulative effect of the conflicting evidence. Essentially, the Health District asks us to weigh the evidence and reach a result different from the court of common pleas. However, the power to weigh evidence is not within this Court's scope of review. *Pons*, 66 Ohio St.3d at 621. Moreover, we may not substitute our judgment for the common pleas court – even if we believe that we would reach a different result – when we have found that the court of common pleas acted within the scope of its authority under R.C. 119.12. We find that the common pleas court acted in accordance with its scope of review in determining that the charges against Eckert were not supported by reliable, probative, and substantial evidence, and in overruling the decision of the Board. Accordingly, the common pleas court did not abuse its discretion. On this basis, the Health District's assignment of error is overruled.

### III

{¶49} We have determined that the common pleas court acted within its scope of review under R.C. 119.12, and therefore did not abuse its discretion. The assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶50} I respectfully dissent. I would reverse as, in my opinion, the trial court exceeded its scope of review.

APPEARANCES:

SHERRI BEVAN WALSH, Prosecuting Attorney, and LESLEY A. WALTER, Assistant Prosecuting Attorney, for Appellant.

NANCY GRIM, Attorney at Law, for Appellee.