[Cite as *Horn v. Ohio Dept. of Ins.*, 2017-Ohio-231.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| ANTHONY J. HORN | | C.A. No.      15CA010892 |
|     Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| OHIO DEPARTMENT OF INSURANCE | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
|     Appellee | | CASE No.      15CV186403 |

DECISION AND JOURNAL ENTRY

Dated: January 23, 2017

SCHAFER, Judge.

{¶1} Plaintiff-Appellant, Anthony Horn, appeals from the judgment of the Lorain County Court of Common Pleas affirming the decision of the Ohio Department of Insurance to suspend his license as a surety bail bond insurance agent. For the following reasons, we affirm.

I.

{¶2} In 2011, Horn attempted to obtain an appointment as a bail bond insurance agent with Indiana Lumbermens Mutual Insurance Company ("ILM") in order to place bail bonds. However, ILM informed Horn that he did not have sufficient collateral to indemnify his bonds for a direct appointment. ILM referred Horn to American Bonding Company, LLC ("ABC") and its owner, Lee Sexton, to inquire if ABC would be willing to supervise Horn in writing bail bonds on behalf of ILM. ABC agreed and the parties entered into a series of contracts to explain the relationship between Horn, ABC, and ILM.

{¶3}   Horn, ILM, and Underwriters Surety, Inc. ("Underwriters") executed a Supervised Representative's Bail Bond Agreement which was approved by ABC.  Pursuant to this agreement, ILM appointed Horn as its agent for the limited purpose of executing bail bonds and binding ILM on said bonds in the State of Ohio.  Horn was authorized to collect a premium on those bonds and required to remit that premium to ABC, Underwriters, and ILM respectively.  Horn was to be an independent agent and the agreement explicitly stated that ILM would not supervise Horn in the conduct of his business, but that ABC could supervise Horn according to the terms of any agreement made between ABC and Horn.  Accordingly, Horn and ABC executed a Sub-Agent's Agreement and Horn, Sexton, and Sexton's wife, Norena Sexton, executed a Supervised Representative Guaranty Agreement.

{¶4}   Eventually the relationship between Horn and ABC began to disintegrate.  Horn and Sexton met in an attempt to resolve the matter.  Horn presented Sexton with a copy of his bail bond agent report, which showed the amount of premium collected and the liability written by Horn.  The report showed Horn had an outstanding balance of premium owed.  Horn wrote a check to ABC that day for partial payment due.  After receiving the check, Sexton determined Horn still owed premium in the amount of $3,141.50 and contributions to Horn's Build-Up Fund ("B.U.F.").  However, Horn did not pay ABC or ILM any additional premium.  Ultimately, ILM terminated Horn as an agent and informed Horn that his B.U.F. account would not be returned until Horn satisfied all contractual obligations including an accounting of all powers of attorney issued to him and disposal of all open liability and bond forfeitures.

{¶5}   Subsequently, Sexton filed a complaint with the Ohio Department of Insurance ("Department"), who issued a Notice of Opportunity for Hearing advising Horn that the Superintendent intended to revoke his surety bail bond insurance agent license and/or take any

other action(s) authorized by R.C. 3905.14(D). The Notice alleged Horn had written bail bonds on behalf of ABC and ILM, but failed to remit premium payments to ABC or ILM. Horn requested the opportunity for a hearing.

{¶6} Following the administrative hearing, the hearing officer found that "[t]he State of Ohio proved by a preponderance of the evidence that Respondent failed to remit premium payments to ABC or ILM as alleged in Count 1." The hearing officer then recommended that Horn's license as a surety bail bond insurance agent in Ohio be suspended for 180 days, and as a condition of reinstatement, that Horn show proof that he paid the outstanding premium to ABC and that Horn pay a civil penalty of $1,000.00 and administrative costs of $500.00. Horn timely filed an Objection to the report and recommendation raising several arguments. However, the Superintendent of Insurance overruled Horn's objections and accepted, confirmed, and approved the hearing officer's report and recommendations in part and modified it in part. The only modification made by the Superintendent was that as a condition of reinstatement of his surety bail bond license, Horn would have to show proof that he paid the outstanding premium to ILM and not ABC.

{¶7} Horn then filed a timely notice of appeal with the Lorain County Court of Common Pleas. The court of common pleas affirmed the Department's decision, finding the decision was supported by reliable, probative and substantial evidence and was in accordance with the law. However, the Court of Common Pleas stayed the execution of its judgment pending appeal.

{¶8} Horn filed this timely appeal, raising two assignments of error for our review.

II.

## Assignment of Error I

**The trial court abused its discretion when it affirmed the Department of Insurance's Order where it was not supported by reliable, probative and substantial evidence and was not in accordance with law.**

{¶9} In his first assignment of error, Horn argues that the trial court abused its discretion when it found the Department's decision to suspend Horn's surety bail bond insurance license was supported by reliable, probative and substantial evidence and in accordance with the law.

{¶10} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the court must consider the "entire record" to determine whether "reliable, probative, and substantial evidence" supports the agency's order and that the order is in accordance with the law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980). The Supreme Court of Ohio defined "reliable, probative, and substantial evidence" in the following way:

> (1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value.

*Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). Thus, "[t]he common pleas court's review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence[,] and the weight [to be given it].'" *Eckert v. Summit Cty. Pub. Health*, 9th Dist. Summit No. 27844, 2016-Ohio-7076, ¶ 12. "However, the findings of the agency are by no means conclusive."

*Conrad* at 111. Accordingly, a court of common pleas may not substitute its judgment for that of an administrative agency, but must weigh the evidence in the record, including witness credibility. *Id.* at 110.

{¶11} However, an "appellate court's review is even more limited than that of the trial court." *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Unlike the court of common pleas, we do not determine the weight of the evidence. *Id.* On appeal, this court will only determine if the trial court abused its discretion. *Id.* "The term 'abuse of discretion' connotes more than an error of law or judgment; in implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219.

{¶12} In this case, the court of common pleas acknowledged that the testimony at the administrative hearing raised some issues of fact, but pursuant to long-standing Ohio Supreme Court precedent, the court had no authority to impose its own interpretation of the facts and substitute its judgment for that of the administrative agency. *See Henry's Café, Inc. v. Bd of Liquor Control*, 170 Ohio St. 233 (1959). Specifically, the court of common pleas stated, "[a]lthough this court agrees that the defendant's dispute over payment of the premiums through ABC was a good faith dispute over the sharing of joint costs and responsibilities, Horn was still required to make premium payments to [ILM] which were not made." Consequently, the court found the decision of the Ohio Department of Insurance was supported by reliable, probative and substantial evidence and was in accordance with the law.

{¶13} On appeal, Horn argues that since ABC was not a licensed business entity authorized to do business as a surety agent or a managing general agent in the State of Ohio, ABC was not entitled to collect premiums from Horn pursuant to R.C. 3905.85(A),(C) and R.C. 3905.72. Horn first raised these arguments in his objection to the hearing officer's report.

However, the Superintendent rejected Horn's arguments, stating that the claim that ABC did not have the legal capacity to enter into a sub-agent contract was an affirmative defense that must have been raised during the hearing. Since Horn had not raised this affirmative defense at the hearing, Horn had forfeited his right to present it in his objection. Regardless of this statement, the Superintendent went on to state that Horn had benefited from the contract he claimed was void and the "[c]oncepts of quantum meruit and contractual course of dealing mitigate against [Horn]'s argument." The Superintendent further found that ABC's role in the relationship between Horn, ABC, and ILM was to act in a supervisory capacity over Horn and that the premium payments were ultimately due to the underwriter, ILM. Since Horn did not remit premiums to ILM, Horn's argument was unpersuasive.

{¶14} Horn again raised these arguments on appeal to the court of common pleas. The court did not explicitly address the Superintendent's assertion that Horn had forfeited the affirmative defense that ABC did not have the legal capacity to enter into a sub-agent contract or the Superintendent's assertion that quantum meruit and contractual course of dealing cut against Horn's argument. Rather, the court of common pleas stated that Horn was required to make premium payments to ILM which were not made and thus, the order was supported by reliable, probative and substantial evidence and was in accordance with the law. The court of common pleas did not set forth its reasoning for reaching this determination.

{¶15} However, after a thorough examination of the record, we conclude that the court of common pleas did not abuse its discretion. In this case, Horn, ILM, and Underwriters executed a Supervised Representative Agreement, which was approved by ABC. As a part of that agreement, the parties agreed that "Horn shall remit to [ABC], [Underwriters], and [ILM] respectively such payments as are required by and in accordance with the premium remittance

provisions of the Bond Payment Terms."  The attached Supervised Representative Bond Payment Terms form states that ILM's portion of such premiums shall be remitted to ABC or Underwriters Surety, Inc., as Underwriters may direct, on behalf of ILM within forty-five days of the date a bond is written.  Horn's Bail Report dated November 5, 2013, states Horn owed a premium of $4141.50.  Attached to Horn's Bail Report is a copy of a check for $1,000.00 made payable to ABC with the notation "Premium."  Sexton testified during the administrative hearing that Horn did not remit any additional premium after submitting the $1,000.00 check, leaving a remaining balance of $3,141.50 premium due.  As stated above, Horn agreed in the Supervised Representative Agreement to remit to ABC, Underwriters, and ILM respectively such payments as are required by the premium remittance provisions of the Bond Payment Terms.  Although Horn argues ABC did have capacity to enter into such an agreement, the Supervised Representative Agreement was executed between Horn, ILM, and Underwriters with the approval of ABC.  Accordingly, the common pleas court did not abuse its discretion by finding that the Department's decision to suspend Horn's surety bail bond insurance license was supported by reliable, probative and substantial evidence and in accordance with the law since "Horn was still required to make premium payments to [ILM] which were not made."

{¶16}  Therefore, Horn's first assignment of error is overruled.

### Assignment of Error II

*Henry's Café* **should be overruled where changes in circumstances no longer justify continued adherence to the decision; the decision defies practical workability and abandoning the precedent would not create an undue hardship for those who have relied upon it.**

{¶17}  In his second assignment of error, Horn contends that the sanction imposed by the Department was too harsh and this Court should overrule the Ohio Supreme Court's holding in *Henry's Café*, 170 Ohio St. 233.  In that case the Supreme Court stated, "[u]nquestionably, the

Court of Common Pleas may reverse, vacate or modify an order of an agency unless it finds that the order is supported by reliable, probative and substantial evidence, but, where it makes such a finding, it can only affirm and cannot reverse, vacate or modify." *Id.* at 236. However, "[t]his Court has no authority to modify a decision of the Ohio Supreme Court." *State v. Cutlip*, 9th Dist. Lorain No. 08CA009353, 2008-Ohio-4999, ¶ 17.

**{¶18}** Accordingly, Horn's second assignment of error is overruled.

### III

**{¶19}** As we have overruled Horn's first and second assignment of error, the judgment of Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

WHITMORE, J.
MOORE, P.J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

D. CHRIS COOK, Attorney at Law, for Appellant.

MIKE DEWINE, Attorney General, and SCOTT MYERS, Assistant Attorney General, for Appellee.