[Cite as *Buchs v. Lorain Cty. Bd. of Zoning Appeals*, 2024-Ohio-6064.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

DON BUCHS, et al.

    Appellees

    v.

ZONING BOARD OF APPEALS,
LORAIN, OHIO

    Appellant

C.A. No.    24CA012113

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    19CV199440

DECISION AND JOURNAL ENTRY

Dated: December 30, 2024

---

STEVENSON, Presiding Judge.

{¶1} Defendant-Appellant Zoning Board of Appeals, Lorain, Ohio ("Board"), appeals the judgment of the Lorain County Court of Common Pleas reversing the Board's decision and vacating a notice of violation that was issued for the property located at 720 Hamilton Avenue in the City of Lorain, Ohio ("the Property"). For the reasons that follow, we affirm.

I.

{¶2} Plaintiff-Appellee Don Buchs owns the Property and Plaintiff-Appellee Tracy Homenik is Buchs' partner. In addition to the Property, Buchs owns and Homenik manages the properties at 740 Hamilton Avenue and 754 Hamilton Avenue. The Property is the only parcel at issue in this appeal.

{¶3} Before Buchs purchased the Property, it had fallen into a state of disrepair. Buchs and Homenik rehabilitated the Property after its purchase and, after obtaining rental certificates of occupancy, they rented the Property to around ten individuals committed to remain sober.

{¶4}    Homenik manages the Property through her limited liability company, Road 2 Recovery, LLC ("Road 2 Recovery"). According to Homenik, the Property must be operated as a business to receive referrals from the Lorain County Recovery Court. Property tenants pay rent to Road 2 Recovery. At the time of the hearing held before the Board, the Lorain County Recovery Court had referred two individuals to the Property.

{¶5}    Road 2 Recovery is a sober living facility. A house manager lives at the Property to ensure tenants keep the Property clean, that the doors are locked, and tenants are sober. The Property is furnished for its tenants. Tenants receive a bed, dresser, towels, toiletries, a T.V., and food. Rent also includes utilities, cable, and lawn maintenance.

{¶6}    Buchs informed the City of Lorain ("the City") in his March 2019, request for an occupancy permit that the Property has been a rental "for 40 [years] with occupancy permits[]" and that the Property will remain a rental with the "stipulation to live in them is you must be sober." The City granted Buchs' request and issued a conditional rental certificate of occupancy. After approving repairs, the City issued a rental certificate of occupancy in May 2019. Both certificates of occupancy allowed Buchs to use the Property as a rental property.

{¶7}    In July 2019, the City issued a notice of violation to Buchs. The notice of violation informed Buchs that the Property "is currently occupied and being used as a 'Residential Social Service Facility' in violation of the City of Lorain's zoning ordinances." The Property is in an R-2 residential zoning district and residential social service facilities are not permitted in R-2 districts under the Lorain Codified Ordinance ("LCO"). The notice of violation ordered Buchs "to immediately terminate the use of the [P]roperty as a Residential Social Service Facility."

{¶8} Buchs and Homenik appealed the City's notice of violation to the Board. A public hearing on the appeal was held before the Board in September 2019. The Board voted to deny the appeal at the conclusion of the hearing.

{¶9} Pursuant to R.C. 2506.01(A), Buchs and Homenik appealed the Board's decision to the Lorain County Court of Common Pleas. The trial court found that the City failed to rebut the testimony of Buchs and Homenik that no residential social services are offered at the Property and that, as such, the Property does not meet the definition of a residential social service facility. The court found that the Board's decision "was 'unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record'" and it upheld the appeal and vacated the notice of violation.

{¶10} The Board filed this timely appeal, raising one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE LOWER COURT ERRED AS A MATTER OF LAW WHEN IT HELD THAT THE [BOARD'S] DENIAL OF DON BUC[H]S' APPEAL FROM THE CITY OF LORAIN BUILDING DEPARTMENT'S JULY 23, 2019, NOTICE OF VIOLATION WAS "UNSUPPORTED BY A PREPONDERANCE OF SUBSTANTIAL, RELIABLE, AND PROBATIVE EVIDENCE PRESENTED ON THE WHOLE RECORD" AND VACATED THE JULY 23, 2019, NOTICE OF VIOLATION ISSUED TO DON BUCHS, TRACY HOMENIK AND ROAD 2 RECOVERY BY THE LORAIN BUILDING DEPARTMENT.**

{¶11} The Board argues in its sole assignment of error that the trial court erred by reversing its decision and vacating the notice of violation. We disagree.

**Standard of Review**

{¶12} In an administrative appeal under Revised Code Chapter 2506, the common pleas court "is authorized to reverse a final decision of a board of zoning appeals if, after a review of the

complete record, it finds that the board's 'decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.'" *Willow Grove, Ltd. v. Olmsted Twp. Bd. of Zoning Appeals*, 2022-Ohio-4364, ¶ 16, quoting R.C. 2506.04.

{¶13}     The key term is "preponderance." If a preponderance of reliable, probative and substantial evidence does not exist, the Court of Common Pleas "may reverse, vacate, modify or remand." *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979). "'Preponderance of the evidence entails the 'greater weight of the evidence,' evidence that is more probable, persuasive, and possesses greater probative value.'" *Davis v. KB Compost Servs.*, 2002-Ohio-7000, ¶ 10 (9th Dist.), quoting *State v. Williams*, 2002-Ohio-4267, ¶ 13 (5th Dist.).

{¶14}     R.C. 2506.04 provides that the judgment of a trial court "may be appealed by any party on questions of law . . . ." This limited appellate standard of review is set forth in *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 14 and is as follows:

> The court of appeals' standard of review under R.C. Chapter 2506 is more limited. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000), citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, (1984). The court of appeals reviews the common pleas court's judgment only on questions of law and does not have the same extensive authority to weigh the evidence. *Id.* at 147, quoting *Kisil* at 34, fn.4. Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion. *Kisil* at 34, fn. 4. The court of appeals must affirm unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence. *Id.* at 34.

### Analysis

{¶15}     Buchs and Homenik appealed the notice of violation and, upon conclusion of the public hearing, the Board voted to deny the appeal. Buchs and Homenik filed an administrative appeal in the trial court and the trial court found that the Board's decision is "'unsupported by the

preponderance of substantial, reliable, and probative evidence on the whole record'" and upheld the appeal and vacated the notice of violation. The Board appealed to this Court.

{¶16}     In an administrative appeal, credibility is a matter for the administrative agency to determine. *See Best Western Inn & Suites v. Summit Cty. Executive Officer*, 2007-Ohio-6297, ¶ 11 (9th Dist.), citing *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980) (recognizing that the administrative body is the fact-finder as it had the opportunity to observe witnesses and weigh their credibility). The reviewing court then has a duty to "consider the 'entire record' to determine whether "reliable, probative, and substantial evidence' supports the agency's order and the order is in accordance with law." *Eckert v. Summit Cty. Pub. Health*, 2016-Ohio-7076, ¶ 11 (9th Dist.), quoting *Conrad* at 110. *See also Dudukovich*, 58 Ohio St.2d at 206-207.

{¶17}     There is no dispute that the Property is in an R-2 residential district and that the operation of a residential social service facility is not a permitted or conditionally permitted use in an R-2 district. At the time of the notice of violation and hearing, LCO 1221.43 described a residential social service facility as:

> a facility or home which provides resident services to a group of individuals of whom one or more are unrelated, and which may provide additional supervised programming services. Groups served may include the mentally retarded or handicapped, juvenile offenders, drug or alcohol offenders, releasees from state institutions, or wards of the court or welfare system. The category includes, but is not limited to, facilities licensed, supervised, or sponsored by any political subdivision or judicial authority. The category includes, but is not limited to, facilities commonly referred to as "halfway houses" or "group homes[.]"[][1]

The LCO does not define "resident services."

---

[1] After the passage of ordinance 4-21, "residential social service facility" was later defined in LCO 1191.06. The definition of "residential social service facility" is the same in both ordinances.

**{¶18}** This Court has noted that zoning regulations restrict the use of real property in derogation of the common law and that, as such, zoning regulations should be strictly construed in favor of property owners. *Brunswick Ltd. Partnership v Brunswick*, 2024-Ohio-3351, ¶ 27 (9th Dist.), citing *Terry v. Sperry*, 2011-Ohio-3364, ¶ 19. The LCO, as previously stated, does not define "resident services." Because a zoning ordinance is at issue, we must strictly construe the LCO against the City and in favor of Buchs and Homenik.

**{¶19}** The Board argues that the trial court erred as a matter of law when it found the notice of violation was unsupported by a preponderance of substantial, reliable, and probative evidence presented on the whole record and vacated the notice on that basis. The Board maintains that any facility called a sober facility with ten or more unrelated people is a group home and that when the operator of a home cuts the grass, furnishes the home, pays utilities, provides a house manager, and purchases food and toiletries, if needed, the operator is providing resident services. The Board further argues that, based on the testimony at the hearing, the Lorain County Recovery Court may refer tenants and that tenants have chores at the Property. The Board relies upon a pamphlet introduced at the hearing and argues that Road 2 Recovery provides several services to tenants, including 12-step meetings, job training, financial opportunities, and outings. According to the Board, "[t]here is no question that 'resident services' were being provided to the individuals residing at the Property."

**{¶20}** Buchs and Homenik assert residential social services are not offered at the Property and that they "do not provide their tenants with any services beyond those of a landlord renting to tenants." They maintain that they simply rent a furnished house to tenants who are committed to remain sober. In response to the pamphlet upon which the Board relies, Buchs and Homenik emphasize that the pamphlet is for 740 Hamilton Ave., not the Property at issue. Buchs and Homenik

further argue that the Board's interpretation of the LCO is a violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

**{¶21}** Buchs and Homenik testified that the Property is a "rental property" that has around ten tenants. Only two of those residents have been referred by the Lorain County Recovery Court. Individuals "must be sober to rent from [Homenik]." In addition to being sober, Homenik testified that the rules to live at the Property are "basic, you keep your room clean . . . you keep your space clean, just like you would anywhere else." In exchange for rent, tenants receive a room, bed, dresser, towels, toiletries, T.V., cable, utilities, lawn maintenance, and food. While food is provided, tenants are responsible for cooking meals.

**{¶22}** A house manager lives at the Property to "help [Homenik] out" and to "make sure that the doors are locked[.]" A supervising officer of a tenant at the Property agreed that house managers "lock[] up at night" and makes sure "chores are completed[.]"

**{¶23}** Homenik testified about the Road 2 Recovery pamphlet that addresses, among other things, the implementation of 12-step meetings, in-house job training, and other services. The pamphlet, on its face, is for 740 Hamilton and not the Property at issue. Homenik testified that she "do[es] not" provide such services at the Property, and that tenants "just live there. That's it."

**{¶24}** Based on our limited standard of review, we conclude that the trial court did not err in determining that the Board's decision was "'unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.' *R.C. §[]2506.04*." (Emphasis in original.) While the trial court's comment that "[t]he City failed to put forth any evidence that residential social services were being provided to the tenants" is concerning, we note the trial court applied the appropriate standard of review in this administrative appeal by reviewing whether the Board's

decision was supported by a preponderance of substantial, reliable and probative evidence on the whole record.

{¶25} The trial court has not made credibility findings in this case. It has reviewed the evidence in the record, including the hearing transcript and evidence submitted at the hearing, and determined those facts are not reliable, probative and substantial evidence to support the Board's conclusion. For example, the court determined that the pamphlet the City admitted showing services that would be provided did not apply to the Property as it specifically states it applies to a neighboring property. Based on its review of the record, the trial court found "the City has failed to rebut the testimony presented by [Buchs and Homenik] that no services are being offered at [the Property]." Based on that finding, the Court found that a preponderance of the substantial, reliable and probative evidence did not support the Board's decision; thus, the Court ultimately applied the correct standard.

{¶26} The Board attempts to point to evidence it argues is substantial, reliable and probative supporting its decision. It claims that the Property is a group home because tenants share bathrooms, kitchens and common areas, and the operator purchases food and toiletries, if needed. It also claims that a sober facility is a group home. It argues that because Lorain County Recovery Court assigns participants to the Property and supervises those people, those residents are receiving "resident services." Lastly, it points to the pamphlet concerning the nearby property that Road 2 Recovery operates and it maintains the services offered at the nearby property will also be offered at this Property. However, keeping in mind our limited standard of review in a R.C. 2506 appeal and our need to strictly construe zoning ordinances in favor of the Property owner, we cannot find that the trial court erred as a matter of law in failing to affirm the Board's decision.

{¶27}     First, we note that there was clear evidence that the trial court recognized that the pamphlet the City cites does not pertain to the Property on its face. The trial court did not abuse its discretion in recognizing this simple fact and in disregarding any residential services mentioned in the pamphlet, such as drug testing or residential programming managing that had no other source of evidence. Second, the evidence that Lorain Recovery Court places a few participants in the Property and supervises them does not mean the Property owners are offering them residential social services; the only thing that evidence shows is that some entity other than the landlord provides them support services. For a property to be a residential social service facility under LCO 1221.43, the owner of the facility, not some other entity,  must provide the services. Third, LCO 1221.43 does not define a sober house as a group home or specifically include sober homes in its definition of residential facilities. Strictly construing the ordinance in favor of the Property owner, we cannot find that all sober houses are group homes or that sober homes are by definition residential social service facilities.

{¶28}     That leaves the evidence that the tenants have shared common areas, a property manager, receive utilities, food and toiletries, and do chores to support the Board's position. Strictly construing the zoning ordinance in favor of the Property owner as we must, we cannot say the trial court erred in finding that the evidence before the Board did not support that these are "resident services" as required by the LCO. Many rental facilities have common areas, pay for utilities as part of rent, or employ a property manager, these are more akin to features of a rental facility than a "service" a rental property provides. Doing chores for a facility is a service the resident is providing the facility, not a service the facility is providing the resident. That leaves only the facility purchasing food or toiletries if needed as a potential residential social service. If the City wished to define these features as "resident services," it could do so explicitly in its zoning resolutions, but has not.

Accordingly, we cannot say that the trial court abused its discretion in finding common areas, payment of utilities, employing a property manager, purchasing food or toiletries as needed, and the requirement for chores does not transform a rental facility into residential social service facility.

{¶29} Lastly, the trial court noted the testimony of the interim executive director of the Mental Health Addiction and Recovery Services Board that "[r]ecovery residences are new to Ohio." Based on her review, "[f]rom reading how the criteria is looking at recovery residences," she testified that the Property "is more recovery residence versus a social service program [.] . . ." Thus, a witness the City called did not appear to believe that the Property offered residential services sufficient to create a residential social service facility. The trial court found this testimony supported the position that there was not a preponderance of substantial, reliable and probative evidence supporting the Board's decision on the record.

{¶30} Based on the foregoing, we cannot conclude that the trial court abused its discretion in determining that the Board's decision was "unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04; *Independence*, 2014-Ohio-4650, at ¶ 14. The Board's assignment of error is, accordingly, overruled.

### III.

{¶31} The Board's assignment of error is overruled, and the decision of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT


SUTTON, J.
CONCURS.

CARR, J.
DISSENTING.

{¶32} I respectfully dissent as I would conclude that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence.

{¶33} Former Lorain Cod.Ord. 1221.43 defines "residential social services facility" as follows:

> A facility or home which provides resident services to a group of individuals of whom one or more are unrelated, and which may provide additional supervised programming services. Groups served may include the mentally retarded or handicapped, juvenile offenders, drug or alcohol offenders, releasees from state institutions, or wards of the court or welfare system. The category includes, but is not limited to, facilities licensed, supervised, or sponsored by any political

subdivision or judicial authority. The category includes, but is not limited to, facilities commonly referred to as "halfway houses" or "group homes[."]

{¶34} The evidence here clearly demonstrates that the home in question was operated as a residential social service facility. Evidence was submitted that ten unrelated individuals with addiction issues, some of whom are part of court-ordered programs, live in the home with clear rules and structure to help them maintain their sobriety. A property manager resides with these individuals to ensure that all rules are followed, such as chores being completed and doors being appropriately locked. All necessities, such as groceries and toiletries, are provided to assist the residents.

{¶35} Former Lorain Cod.Ord. 1221.43 solely requires that resident services are offered. The ordinance goes on to provide that supervised programming services may be additionally provided. The evidence here shows that services are provided to an unrelated group of individuals sharing the same home. Accordingly, I would reverse.

APPEARANCES:

KENNETH R. RESAR, Attorney at Law, for Appellant.

RYAN M. GEMBALA, Attorney at Law, for Appellees.